**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SANDRA CASE and LOIS EHRENBERG, on behalf of plaintiff and the class defined herein, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | 08 CV 1698 |
| | ) | |
| vs. | ) | Judge Manning |
| | ) | |
| ARROW FINANCIAL SERVICES, LLC and FREEDMAN ANSELMO LINDBERG & RAPPE LLC, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED COMPLAINT  – CLASS ACTION**

**MATTERS COMMON TO MULTIPLE CLAIMS**

**INTRODUCTION**

1.      Plaintiffs Sandra Case and Lois Ehrenberg bring this action to secure redress

from unlawful collection practices engaged in by defendants Arrow Financial Services, LLC and

Freedman Anselmo Lindberg & Rappe LLC.  Plaintiffs allege violation of the Fair Debt Collection

Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").   The FDCPA broadly prohibits unfair or

unconscionable collection methods;  conduct which harasses, oppresses or abuses any debtor; and

any false, deceptive or misleading statements, in connection with the collection of a debt; it also

requires debt collectors to give debtors certain information.  15 U.S.C. §§1692d, 1692e, 1692f and

1692g.

2.      Specifically, plaintiffs allege that defendants brought suit against plaintiffs

on alleged debts barred by the statute of  limitations.

1

## VENUE AND JURISDICTION

3.       This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28 U.S.C.

§1331 and 28 U.S.C. §1337.

4.       Venue and personal jurisdiction in this District are proper because both

defendants are located in this District.

## PARTIES

5.       Plaintiff Sandra Case is an individual who resides in the Northern District of

Illinois.

6.       Plaintiff Lois Ehrenberg is an individual who resides in the Northern District

of Illinois.

7.       Defendant Arrow Financial Services, LLC ("Arrow") is a limited liability

company with its principal place of business at 5996 W. Touhy Avenue, Niles, IL 60714.

8.       Defendant Arrow acts as a collection agency and also engages in the

business of buying bad debts allegedly owed by consumers for a small fraction of face value and

enforcing the debts against the consumers.

9.       Defendant Arrow is  a "debt collector" as defined in the FDCPA.

10.       Defendant Freedman Anselmo Lindberg & Rappe LLC is a law

firm organized as a limited liability company with offices in Naperville, Illinois.

11.       Freedman Anselmo Lindberg & Rappe LLC's practice consists primarily of

the collection from consumers of debts allegedly owed to others, through use of the mails,

telephones, and legal proceedings.

12.       Freedman Anselmo Lindberg & Rappe LLC is a debt collector as defined in

2

the FDCPA.

## FACTS RELATING TO PLAINTIFF CASE

13.      On May 9, 2007,  Freedman Anselmo Lindberg & Rappe LLC, on behalf of

Arrow, filed suit against Sandra Case in the Circuit Court of Cook County, Illinois, case no. 2007

M1 146609.  The complaint and exhibits are attached hereto as <u>Appendix A</u>.

14.      The complaint in <u>Appendix A</u> is a standard form, filled out in a standardized

manner.

15.      Ms. Case was not served until January 2008.

16.      Ms. Case appeared and defended the lawsuit, whereupon defendants

nonsuited it on January 29, 2008.

17.      The alleged debt that the state court action sought to collect was described

in the complaint as a credit card.

18.      Any such debt as was alleged would have been  primarily for personal,

family or household purposes.

19.      The state court complaint did not have attached to it any writing signed by

Ms. Case.

20.       The state court complaint showed on its face that the purported debt was in

default more than 5 years.

21.      Specifically, paragraph 4 of the complaint claimed "the sum of $1,039.05

plus interest at the 5% statutory rate . . . in the amount of $373.14 for a total of $1,412.19."

22.      On information and belief, the $1,039.05 represents the amount of the alleged

debt that Arrow Financial Services, LLC claims to have purchased.

3

23.     Complaints in the form represented by <u>Appendix A</u> are filled out with the amount of the alleged debt purchased by Arrow Financial Services, LLC plus interest added thereto by Arrow.

24.     At 5%, interest on $1,039.05 is $51.95 per annum.

25.     The claim of $373.14 interest therefore represents 7.18 years' worth of interest ($373.14 divided by $51.95 is 7.18).

26.     The debt was barred by the five-year statute of limitations.

## FACTS RELATING TO PLAINTIFF EHRENBERG

27.     On August 8, 2007,  Freedman Anselmo Lindberg & Rappe LLC, on behalf of Arrow, filed suit against Lois Ehrenberg in the Circuit Court of Cook County, Illinois, case no. 2007 M1 178937.  The complaint and exhibits are attached hereto as <u>Appendix B</u>.

28.     The complaint in <u>Appendix B</u> is a standard form, filled out in a standardized manner.

29.     Ms. Ehrenberg was allegedly served by substitute service on in November 2007 and a default judgment was entered against her.

30.     Ms. Ehrenberg appeared and had the judgment against her vacated.  She retained counsel and defended the lawsuit, whereupon defendants nonsuited it on March 25, 2008.

31.     The alleged debt that the state court action sought to collect was described in the complaint as a credit card.

32.     Any such debt as was alleged would have been  primarily for personal, family or household purposes.

33.     The state court complaint did not have attached to it any writing signed by

Ms. Ehrenberg.

34.    The state court complaint showed on its face that the purported debt was in default more than 5 years.

35.    Specifically, paragraph 4 of the complaint claimed "the sum of $1,456.65 plus interest at the 5% statutory rate . . . in the amount of $648.51 for a total of $2,105.16."

36.    On information and belief, the $1,456.65 represents the amount of the alleged debt that Arrow Financial Services, LLC claims to have purchased.

37.    Complaints in the form represented by <u>Appendix B</u> are filled out with the amount of the alleged debt purchased by Arrow Financial Services, LLC plus interest added thereto by Arrow.

38.    At 5%, interest on $1,456.65 is $72.83 per annum.

39.    The claim of $648.51 interest therefore represents 8.9 years' worth of interest ($648.51 divided by $72.83 is 8.9).

40.    The debt was barred by the five-year statute of limitations.

## FACTS - GENERAL

41.    Other complaints filed by Freedman, Anselmo, Lindberg & Rappe LLC on behalf of Arrow Financial Services LLC in the form represented by <u>Appendices A and B</u> also show that they were filed beyond the statute of limitations.  To illustrate:

| Consumer | Case no | Interest Claimed | Debt Without Interest | Years needed to accrue at 5% |
|----------|---------|------------------|-----------------------|------------------------------|
| Oscar L. Ware | 07 M1 146607 | 438.32 | 1140.98 | 7.68 |
| Daniel G. Koste | 07 M1 146608 | 274.68 | 723.22 | 7.59 |
| Amani Adballah | 07 M1 146610 | 1825.70 | 3546.53 | 10.3 |
| Cheryl Rogers | 07 M1 146611 | 338.04 | 1039.55 | 6.5 |
| Latasha Cleghorn | 07 M1 146614 | 789.56 | 2036.67 | 7.7 |
| Ivonne Arocho | 07 M1 146615 | 3436.61 | 7446.59 | 9.2 |
| Pamela Gray | 07 M1 146617 | 199.59 | 650.30 | 6.13 |
| Prince Williams | 07 M1 146618 | 237.65 | 795.08 | 5.9 |
| Kathleen Dineen | 07 M1 146619 | 496.48 | 1047.15 | 9.4 |
| Tiata C. Johnson | 07 M1 146620 | 432.59 | 963.81 | 8.9 |
| Joni L. West | 07 M1 146622 | 226.01 | 507.21 | 8.9 |

## COUNT I – FDCPA – FILING SUIT ON TIME-BARRED DEBTS

42.    Plaintiffs incorporate paragraphs 1-41.

43.    The state court actions were barred by the five-year Illinois statute of limitations.

44.    On information and belief, defendants regularly file debt collection actions without attaching a written contract signed by the putative debtor where the last payment date or charge-off date is more than five years prior to filing.

45.    The filing and prosecution of time-barred lawsuits is both a deceptive collection practice, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), and 1692e(10), and an unfair collection practice, in violation of 15 U.S.C. §1692f.   *Kimber v. Federal Financial Corp.*, 668 F.Supp. 1480 (M.D.Ala. 1987).

46.    Section 1692e provides:

**§ 1692e.        False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation**

6

of this section: . . .

  **(2) The false representation of--**

    **(A) the character, amount, or legal status of any debt; . . .**

  **(5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**

  **(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

47. Section 1692f provides:

  **§ 1692f. Unfair practices [Section 808 of P.L.]**

  **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .**

## CLASS ALLEGATIONS

48. Plaintiffs bring this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

49. The class consists of (a) all individuals (b) against whom Freedman Anselmo Lindberg & Rappe, LLC filed a collection lawsuit in the Illinois state courts, (c) on behalf of Arrow Financial Services, LLC (d) within one year prior to the filing of this action (e) to collect an alleged credit card debt (f) in which the complaint is in the form represented by Appendices A and B (g) and the complaint shows that the debt was acquired by Arrow more than 5 years prior to the filing of the collection lawsuit.

50. The class is so numerous that joinder of all members is not practicable.

51. On information and belief, there are at least 40  individuals against whom Freedman Anselmo Lindberg & Rappe, LLC filed a collection lawsuit in the Illinois state courts, on

behalf of Arrow Financial Services, LLC, within one year prior to the filing of this action, to collect

an alleged credit card debt, in which the complaint is in the form represented by <u>Appendices A and B</u>,

and the complaint shows that the debt was acquired by Arrow more than 5 years prior to the filing of

the collection lawsuit.

   52. There are questions of law and fact common to the class members, which

common questions predominate over any questions relating to individual class members.  The

predominant common questions are whether defendants engage in a practice of filing time-barred

complaints  and whether such practice violates the FDCPA.

   53. Plaintiffs' claim is typical of the claims of the class members.  All are

based on the same factual and legal theories.

   54. Plaintiffs will fairly and adequately represent the class members.  Plaintiffs have

retained counsel experienced in class actions and FDCPA and collection abuse litigation.

   55. A class action is a superior method  for the fair and efficient adjudication of

this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights;

    c. Congress intended class actions to be the principal enforcement

mechanism under the FDCPA.

   WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class

members and against defendants for:

    (1) Statutory damages;

    (2)  Attorney's fees, litigation expenses and costs of suit;

(3)     Such other and further relief as the Court deems proper.


s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER
          & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)


**<u>JURY DEMAND</u>**

Plaintiff demands trial by jury.


s/Daniel A. Edelman
Daniel A. Edelman

## **NOTICE OF LIEN**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.

s/Daniel A. Edelman
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## <u>CERTIFICATE OF SERVICE</u>

      I, Daniel A. Edelman, hereby certify that on April 9, 2008 I filed the forgoing documents with the Clerk of the Court using the CM/ECF System, and caused to be served  a true and accurate copy of such filing via United States Certified mail upon the following parties:

**Arrow Financial Services, LLC**
c/o CT Corporation System
208 S. LaSalle Street, Suite 814
Chicago, IL 60604

**Freedman Anselmo Lindberg & Rappe LLC**
1807 W. Diehl Road
Suite 333
Naperville, IL 60563

                                        s/Daniel A. Edelman    
                                        Daniel A. Edelman

# APPENDIX A

Complaint - Note                                                                                (3-81)CCMD-8A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COOK COUNTY, ILLINOIS



06031281

ARROW FINANCIAL SERVICES LLC )
                              )
                              )        CASE NO. 07M1 146609
                              )
          Plaintiff,          )        AMOUNT CLAIMED: $1762.19
                    v.        )
                              )        RETURN DATE:    06/12/2007
SANDRA CASE                   )
                              )
                              )
          Defendant.

## CONTRACT COMPLAINT

The plaintiff claims as follows:

1.    That the defendant, SANDRA CASE    , is indebted to plaintiff, ARROW FINANCIAL SERVICES LLC
      by virtue of a certain credit card agreement entered into by defendant on or about May 5, 1997; said
      agreement and/or terms are attached hereto and made a part hereof.

2.    Plaintiff has performed any and all conditions required by the contract, if any, and defendant has agreed to
      the terms of the credit agreement by use of the credit extended by plaintiff.

3.    That the defendant(s) are in default of the terms of the agreement by failing to make payments due.

4.    That after allowing for all credits due defendant, there is due and owing as of April 28, 2007 the sum of
      $1,039.05 plus, interest at the 5% statutory rate pursuant to 815 ILCS 205/2 in the amount of $373.14 for a
      total of $1,412.19.

5.    That plaintiff claims reasonable attorneys fees in the amount of $350.00 as provided for in said agreement
      attached hereto.

6.    That demand has been made upon the defendant for the balance due, but defendant has failed to pay and still
      continues to refuse to pay said balance justly due.

7.    That the plaintiff, ARROW FINANCIAL SERVICES LLC    , is the bona fide owner of title to this action.

      WHEREFORE, plaintiff prays for judgment against the defendant in the amount of $1762.19 plus statutory
interest to date of judgment plus costs of this action.

_____

Louis S. Freedman                          FREEDMAN ANSELMO LINDBERG & RAPPE LLC
Freedman Anselmo Lindberg & Rappe LLC                              630/983-0770
PO Box 3228   Naperville, IL 60566-7228                     Fax No. 630-983-3726
Attorney No. Cook 26122                                                   P0343P

## THIS COMMUNICATION IS FROM A DEBT COLLECTOR.

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COOK COUNTY, ILLINOIS**

| | | |
|---|---|---|
| ARROW FINANCIAL SERVICES LLC | ] | YOUR FILE NO. |
| | ] | 7436349 |
| | ] | |
| | ] | |
| Plaintiff, | ] | |
| v. | ] | CASE NO. |
| SANDRA CASE | ] | |
| | ] | 07M1 146609 |
| | ] | |
| | ] | |
| Defendant. | ] | |

# A F F I D A V I T

I, _____Nicole Spivey_____, being first duly sworn, depose and say that I have personal knowledge of the facts hereinafter said forth and that if sworn as a witness I can testify competently thereto:

1. That I hold the position of _Legal Outsourcing Clerk_ with ARROW FINANCIAL SERVICES LLC incorporated under the laws of the State of _____DELAWARE_____;

2. I have knowledge of an account in favor of ARROW FINANCIAL SERVICES LLC and against SANDRA CASE with a total current balance due of $1,404.93 as of March 8, 2007; plus interest at 5%, pursuant to 815 ILCS 205/2 from the aforesaid date; until paid is with my knowledge true and correct, after all credits due the defendant, and that upon information and belief all services were rendered and/or goods were sold and delivered or that the defendant(s) are in breach of the repayment terms as per any and all agreements between the aforementioned parties.

SIGNED AND SWORN
TO BEFORE ME THIS DATE

_4 - 16 - 07_

_____
NOTARY PUBLIC

_____ SIGNATURE

Nicole Spivey
_____ PRINTED

"OFFICIAL SEAL"
R DeLeon
Notary Public, State of Illinois
Commission Expires 1/3/2011

F002ARR

**ACTION CARD**

# $89/$69 Cardmember Agreement

## DIRECTORY

FOR PAYMENTS:
Action Card
P.O. Box 5159
Sioux Falls, SD 57117-5159

FOR CUSTOMER INQUIRIES:
Action Card
P.O. Box 5052
Sioux Falls, SD 57117-5052

### IMPORTANT PHONE NUMBERS

| | |
|---|---|
| Customer Service: | 1-800-839-6641 |
| Fax Line: | 1-800-354-9658 |
| Lost/Stolen Card Reports: | 1-800-839-6641 |
| Application Assistance: | 1-800-964-5147 |
| Website Address: | www.actionbankcard.com |

### CARDMEMBER AGREEMENT

This agreement ("Agreement") contains terms and conditions under which a credit card account ("Account") has been established for you. The word "Card" means the VISA® or MasterCard® credit card issued to you in connection with your Account. The words "we," "us" and "ours" mean BANKFIRST, the issuer of the Action Card. The words "you" and "yours" mean each person who applied for the Account, each person to whom we issue a Card, and anyone else who uses your Card with your consent. Your execution of the application for the Account (or, in the case of a telephonic application, your oral request for the Account) and the use of the Card constitutes your agreement to the terms and conditions of this Agreement. Please read this Agreement carefully.

1. YOUR CARD. You may use your Card or Account to purchase or lease goods or services ("Purchases") wherever the Card is honored. From time to time we may offer you other services (Optional Services) which will be billed to your account. You also may use the Card to obtain cash ("Cash Advances") from any financial institution that accepts the Card, or any qualified Automatic Teller Machine ("ATM"). Each time you use your Card, you are requesting us to make a loan to you. If you use your Account number without presenting your Card (such as for a mail order or telephone purchase), the legal effect will be the same as if you used the Card itself.

You agree to sign the back of the Card issued to you in connection with your Account immediately upon receipt. The Card will remain our property and must be surrendered to us upon demand. The Card is nontransferable, and it may be canceled, repossessed, or revoked at any time without prior notice subject to applicable law. Initially, your Card will be valid for 12 months unless canceled, repossessed, or revoked by us. Thereafter, if we elect to renew the Card issued to you, the Card will be valid for a period to be determined by us, unless canceled, repossessed, or revoked by us.

We may, at our option, give you a Personal Identification Number ("PIN"). If we give you a PIN, you may use your Card to obtain a Cash Advance from any ATM that bears the VISA or MasterCard logo. All ATM transactions are treated as Cash Advances. We have the right to restrict your access to any qualified ATM at any time. You should not keep your PIN with your Card. If you believe that anyone has gained unauthorized access to your PIN, you should advise us immediately, following the procedures in the paragraph labeled "Liability for Unauthorized Use."

2. AUTHORIZED USERS. You may request an additional Card on your Account for another person, termed an "Authorized User." You may also permit another person to have access to your Card or Account number. However, if you do, you are liable for all charges made by those persons. You must notify us to revoke permission for any person you previously authorized to use your Account. You are responsible for all charges and fees incurred by an Authorized User. If you tell us to revoke an Authorized User's use of your Card, we may close your Account and issue a new Card or Cards with a different Account number. You are wholly responsible for the use of each Card issued on your Account according to the terms of this Agreement.

3. JOINT CARDMEMBERS. In the case of joint cardmembers, each is jointly and severally liable for the full amount of all Purchases, Optional Services, Cash Advances, finance charges, other fees and charges, and any other monetary obligations associated with the Account, including amounts in excess of your credit limit. This means that we may collect the full amount from any of you even if the amount is incurred by any other joint cardmember.

4. CREDIT LIMIT. The initial credit limit for your Account is shown on the folder containing your Card. We may change your credit limit from time to time, and your current credit limit will appear on your monthly billing statement. You agree not to make any transaction that would cause the unpaid balance of your Account, including accrued but unpaid finance charges and other fees and charges, to exceed your credit limit. In addition, the maximum Cash Advance balance of your Account may not exceed 20 percent (20%) of your credit limit. This Agreement will also apply to the amounts in excess of your credit limit, and you agree to pay the excess immediately upon demand. You agree that we may change or cancel your credit limit at any time without affecting your obligation to pay the amounts which you owe under this Agreement. A payment made on your Account may not restore the credit available to you under your Account until ten (10) days after the date on which the payment is posted to your Account.

5. AUTHORIZATIONS. We will not be responsible for the refusal of any merchant or bank to honor the Card or request for a loan or sale. Adjustments for overpayments or otherwise will be made by adjustments to your Account and not directly to you. Nothing herein shall deny or restrict us from the pursuit of any remedies available to us by law.

6. PAYMENTS. You promise to pay us all amounts advanced by us to you under this Agreement, plus all finance charges assessed on those amounts, and all charges, costs, and fees which you incur under the terms of this Agreement. Payments shall be due and payable monthly, and must be made to us at the address shown on the monthly billing statement on or before the "Payment Due Date" shown on the monthly billing statement. Payments received by 10 a.m. Central Standard Time on business days at the address specified in your statement will be credited as of the date of receipt. Payments received later or on non-business days may be credited as of the next business day. Saturdays, Sundays, and federal holidays are not considered business days, even if we are open. Payments received at other locations may not be credited for up to five days. Credit for payments may also be delayed up to five days if payments are not sent in the standard payment envelope along with the statement stub, if payments include staples or paper clips, or if correspondence is attached to the payments. You may repay any or all of the amounts you owe at any time without penalty, but you must pay at least the minimum monthly payment on or before the Payment Due Date. The minimum payment required is the "New Balance" shown on your statement, if the amount is equal to or less than $25.00. If the New Balance exceeds $25.00, the minimum payment is (a) four percent (4%) of the portion of the New Balance which does not exceed your credit limit (rounded to the nearest dollar), or (b) $25.00, whichever is greater, plus the total of any Optional Services, plus the entire portion of the New Balance in excess of your credit limit, plus any amount past due. At our discretion, we may accept late or partial payments as well as payments that are marked "paid in full" or other restrictive endorsements, without losing any of our rights under this Agreement. Payments must be made in U.S. Dollars, and all checks or other items tendered in payment of the amounts due on the Account must be drawn on funds on deposit in the United States.

7. FINANCE CHARGES. To avoid incurring additional finance charges on the balance of Purchases or Optional Services reflected on the statement and any new Purchases and Optional Services appearing on your next statement, you must pay the New Balance, which appears on your billing statement, on or before the Payment Due Date. Finance charges on Cash Advances will be imposed from the date made or from the first day of the billing cycle in which the Cash Advance is posted to your Account, whichever is later, and will continue to accrue until the date payment is received in full.

As of May 31, 2000, the monthly "Periodic Rate" used to compute finance charges would be 1.785%, which corresponds to an ANNUAL PERCENTAGE RATE of 21.42%, divided by twelve. The Annual Percentage Rate may vary monthly. The Annual Percentage Rate is determined by adding 11.92% to the highest U.S. Prime Rate, as published in The Wall Street Journal, on the last business day of each month. Any change in the Annual Percentage Rate will take effect on the first day of your next billing statement in the month following the change and will apply to all balances carried forward from your previous billing statement. In the event The Wall Street Journal ceases to publish the U.S. Prime Rate, we reserve the right to substitute a comparable new index. There is no limitation on the amount the rate may increase or decrease. Any increase in the Annual Percentage Rate will cause the amount of finance charge assessed on your account to also increase.

The finance charge for a billing cycle is computed by applying the monthly Periodic Rate to the "Average Daily Balance." The Average Daily Balance is determined by dividing the sum of the daily balances during the billing cycle by the number of days in the cycle. Each daily balance is determined

Cardmember Agreement

by adding to the "Previous Balance" any new Purchases, Optional Services or Cash Advances posted to your Account as of the transaction date or the first day of the billing cycle in which posted, whichever is later and subtracting any payments received and credits posted to your Account, but excluding any unpaid finance charges.

8. PERIODIC FEE. We will impose an "Annual Fee" on your Account of $89.00 ($99.00 if a joint or Authorized User Account) and this Annual Fee will be imposed in about the same billing cycle each year. You agree to pay this fee even if you do not use the Account. The Annual Fee will be charged to your Account as a Purchase, and it will be included in the computation of the Average Daily Balance. Unless prohibited by law or regulation, Annual Fees may be treated as additional charges to your account and may be subject to finance charges. We maintain and reaffirm our policy of rebating a portion of the Annual Fee to you if you terminate your Card and Account. The rebated portion is calculated on a prorated basis.

9. OTHER FEES. We will assess an "Overlimit Fee" of $25.00 for each billing cycle that your Account balance exceeds your credit limit at any time during the billing cycle. We will assess a "Late Fee" of $25.00 for each billing cycle that your minimum monthly payment is not received at the address shown on the monthly billing statement on or before the Payment Due Date shown on the monthly billing statement. If your Account charge privileges are suspended or canceled, a $25.00 "Reinstatement Fee" will be assessed to reactivate your charge privileges. A "Return Item Fee" of $25.00 may be assessed for any check or other item tendered in payment of the amounts due on the Account which is returned for any reason, including insufficient funds in the account on which it was drawn. In the event that your check is returned unpaid for insufficient or uncollected funds, we may represent your check electronically. Your check will not be returned to you, but a copy can be retrieved by contacting your financial institution. Unless prohibited by law or regulation, Other Fees may be treated as additional charges to your Account and may be subject to finance charges.

10. OTHER FINANCE CHARGES. We will assess a Cash Advance Fee FINANCE CHARGE of $2.50 or 3 percent (3%) of the Cash Advance amount, whichever is greater, for each Cash Advance transaction made with your Card. We will assess a FINANCE CHARGE of $5.00 for each telephone authorized payment. We will assess a Wire Fee FINANCE CHARGE of $10.00 for each incoming wire transfer. In addition, we will assess a one-time Action Card Enrollment FINANCE CHARGE of $69.00 when your account is established. We maintain and reaffirm our policy of rebating a portion of the Action Card Enrollment to you if you terminate your Card and Account. The rebated portion is calculated on a prorated basis.

11. CHARGES MADE IN FOREIGN CURRENCIES. If you incur a charge in a foreign currency, the charge will be converted into a U.S. Dollar amount. The procedures for the conversion of a foreign currency transaction into U.S. Dollars will be set forth in operating regulations of the applicable credit card association as may be in effect at the time the transaction is processed.

12. DEFAULT. We may, at our option, declare your Account to be in default upon the occurrence of any of the following events:

   a. You fail to make any payment required under the terms of this Agreement when due;
   b. You fail to comply with any of the terms and conditions set forth in the Agreement;
   c. You exceed your credit limit;
   d. You die or become bankrupt or insolvent;
   e. You provide us with financial information which is false or misleading in any material respect;
   f. You fail to provide us with updated financial statements when requested, or any updated financial statement provided by you to us reflects a material adverse change in your financial conditions;
   g. We, in good faith, deem ourselves to be insecure or believe that the prospect of payment is impaired; or
   h. One joint cardmember requests that the rights of another joint cardmember to use the Account be terminated.

Cardmember Agreement

If we declare your Account to be in default, your ability to use the Account and the Card will be terminated. Our failure to declare your Account in default does not excuse you from performing all of your obligations under this Agreement, nor shall such failure constitute a waiver of our right to declare the Account in default and terminate your ability to use the Account and the Card at a later time or upon the occurrence of the same or a different event of default.

If any one or more of the events of default specified occur, we may, at our option, declare all sums due and owing under the terms of this Agreement to be immediately due and payable in full, and may exercise all other rights or remedies permitted by law.

We are not obligated to exercise any of our rights or remedies in the event of your default under this Agreement. Our election to exercise any one right or remedy shall not constitute a waiver of our right to exercise any other right or remedy, nor does our failure to exercise a right or remedy following default preclude our exercise of that right or remedy, or any other right or remedy, in the event of a subsequent default. We may delay enforcing our rights under this Agreement without losing them. A waiver of any right by us shall not be deemed to be a waiver of other rights or of the same right at another time.

13. TERMINATION OF THE ACCOUNT AND THE CARD. We may terminate your ability to use the Account and the Card at any time without prior notice. If the Account and the Card are terminated, you must pay all amounts owing under the Agreement but you may continue to make minimum monthly payments under this Agreement, unless the Account and the Card are terminated because of your default under the terms of this Agreement.

14. ATTORNEY'S FEES. You agree to pay all costs incurred by us, our successors, or assignees, in collecting unpaid indebtedness or in enforcing this Agreement, including attorney's fees and costs, as well as those costs, expenses and attorney's fees incurred by appellate, bankruptcy and post-judgement proceedings, except to the extent that such costs, fees, or expenses are prohibited by law.

15. ARBITRATION. If you or we are not able to resolve our differences informally, you and we agree that any dispute, regardless of when it arose, shall be resolved at the option of you or us, by arbitration in accordance with this provision.

A "Dispute" is any claim or controversy of any kind that arises out of, or is in any way related to, your Agreement and Account with us. It includes statutory, common law and equitable claims including the validity or enforceability of the arbitration provision. "Dispute" also includes our claims against you, including collection of sums due to us.

"Arbitration" is a means of having an independent third party resolve a Dispute. Either you or we can request that a Dispute be submitted to Arbitration. Either you or we can do this at any time regardless of whether a lawsuit has been filed or not, unless such lawsuit has resulted in a judgement other than default judgement.

UNDER ARBITRATION, YOU WILL NOT HAVE THE RIGHT TO GO TO COURT OR TO HAVE A JURY TRIAL, TO ENGAGE IN PRE-ARBITRATION DISCOVERY, EXCEPT AS PROVIDED FOR IN THE ARBITRATION RULES, OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY DISPUTE. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.

Each Arbitration, including the selection of the arbitrator, will be administered by the American Arbitration Association ("AAA") pursuant to its Commercial Arbitration Rules. The Arbitration will be conducted in the state of your residence. Each Arbitration will be governed by the Federal Arbitration Act (Title 9 of the United States Code), and to the extent any provision of that Act is inapplicable, the laws of the State of South Dakota. To find out how to initiate an Arbitration, simply call any office of the AAA for more information. If either party fails to submit to Arbitration following a proper demand to do so, that party shall bear all costs and expenses, including reasonable attorney's fees, incurred by the other party compelling Arbitration.

The arbitrator shall have the authority to award any remedy or relief that a court in South Dakota could order or grant. The arbitrator, however, is not authorized to change or alter the terms of your Agreement, including this Arbitration provision.

In an Arbitration in which the Dispute or the award made exceeds $25,000 in the aggregate, or there is a request for equitable relief with a potential financial impact in excess of $25,000 in the aggregate, the award of the arbitrator shall be in writing and shall specify the facts and the law on which it is based. In such Arbitration, (1) the arbitrator shall not have the power to make any award which is not supported by substantial evidence, or which is based on legal error; (2) an award shall not be binding upon the parties, unless the findings of fact are supported by substantial evidence, and the conclusions of law are not erroneous under the substantive law of the State of South Dakota; and (3) the parties shall have, in addition to the grounds referred to in the Federal Arbitration Act for vacating,

modifying or correcting an award, the right to judicial review of (a) whether the findings of fact rendered by the arbitrator are supported by substantial evidence, and (b) whether the conclusions of law are erroneous under the substantive law of the State of South Dakota. Judgement confirming an award in such a proceeding may be entered only if a court determines that the award is supported by substantial evidence and not based on legal error under the substantive law of the State of South Dakota.

All statutes of limitation applicable to any Dispute shall apply to any Arbitration between you and us.

If a Dispute is properly filed in a small claims or justice court, and if the small claims or justice court has jurisdiction to resolve the claim, including all crossclaims and counterclaims, then the party that demands Arbitration and removes the Dispute from the small claims or justice court shall pay the administrative fee of the AAA and the fees, costs and expenses of the arbitrator.

The foregoing Agreement shall not prevent us from exercising our rights under any security agreement, in the case of a debt arising from any non-consumer credit transaction, our right to set off.

16. NOTICES. Any notice required to be provided to you under this Agreement shall be given at your address shown on our records and shall be effective when mailed by us unless otherwise required by South Dakota, in which case South Dakota law will govern. You agree to advise us promptly of any change to your address. If you are a California resident, you agree that we may obtain your most current residence address from the Department of Motor Vehicles and therefore you waive your rights under the Vehicle Code Section 1808.21. Any notice to Action Card at P.O. Box 5052, Sioux Falls, SD 57117-5052, or such other address as we may give by notice to you as provided in this Agreement, shall be effective when received by us. We may report your performance under this Agreement to credit reporting agencies. The information provided will be your name, address, Account number, Social Security number, the status of your Account, and any other information required by law. If you think we have reported erroneous information about you to a credit reporting agency, please notify us. We will investigate the matter by contacting each credit reporting agency whose records may reflect the error and requiring them to correct your report if you are correct. If we disagree with you after the investigation, we will notify you in writing or by telephone and instruct you how to submit to those agencies a statement of your position that will become a part of your credit report with them.

17. SEVERABILITY. If any provision of this Agreement shall be determined to be invalid or unenforceable under any rule, law, or regulation of any governmental agency, local, state, or federal, the validity or enforceability of any other provision of this Agreement shall not be affected.

18. GOVERNING LAW. This Agreement will be governed by the law of the State of South Dakota except to the extent governed by federal law.

19. AMENDMENT OR MODIFICATION. We may modify this Agreement with regard to existing balances and future transactions by mailing notice of the modification to you at your current designated address. We may change the Annual Percentage Rate or any other term in this Agreement. We will provide prior notice to you of any such modification, as may be provided by South Dakota or federal law.

20. FINANCIAL STATEMENTS. You agree to provide us with an updated financial statement upon request.

21. CREDIT INFORMATION. You agree that we may request a consumer credit report from one or more credit reporting agencies in connection with your application and the administration of your Account. You also authorize us to exchange credit information concerning you or your Account with (and answer questions and requests from) others, such as merchants and credit reporting agencies.

22. SHARING INFORMATION WITH AFFILIATES. We may share information about you with our affiliated companies. You may request that we do not share information (other than that related to your Account) with our affiliates by writing to us at: Action Card, P.O. Box 5052, Sioux Falls, SD 57117-5052. Please include your name, address and Account number with your request.

23. CARDMEMBER LISTS. From time to time, we may share our cardmember lists with companies whose products and services we think will be of interest to you. We carefully review these offers to make sure they meet our standards. You may request that your name not be given to these companies by writing to us at: Action Card, P.O. Box 5052, Sioux Falls, SD 57117-5052. Please include your name, address and Account number with your request.

Cardmember Agreement

24. SKIP/PROMOTIONAL FEATURES. From time to time, we may let you skip or reduce one or more monthly payments during a year and/or we may temporarily reduce or eliminate certain finance charges on all or a portion of your Account balance or offer you other special terms. If we do, we will advise you of the scope and duration of the applicable skip or promotional feature. When the skip or promotional feature ends, your regular rates and terms will resume.

25. TELEPHONE INSTRUCTIONS/MONITORING. If your application was taken over the telephone, you confirm your consent to our recording of your telephone application and you acknowledge that this recording represents your application for your Card and Account and your acceptance of the terms of this Agreement. If we receive instructions by telephone from someone we believe to be a party to this Agreement, we may, at our sole discretion, follow the instructions. Our understanding of such instructions and our records shall be conclusive evidence of the actual instructions given. We may monitor telephone conversations we have with you in order to ensure high-quality response and service. You agree that we will have such right with respect to all telephone conversations between you and our employees, whether initiated by you or any of our employees.

26. LIABILITY FOR UNAUTHORIZED USE. You may be liable for unauthorized use of your Card. You will not be liable for unauthorized use that occurs after you notify us orally or in writing of the loss, theft, or possible unauthorized use at: 1-800-839-6641, Action Card Security Department, P.O. Box 5017, Sioux Falls, SD 57117-5017. In any case your liability will not exceed $50. See "Your Billing Rights" listed on the back panel for additional information.

YOUR BILLING RIGHTS
KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at Action Card, PO Box 5012, Sioux Falls, SD 57117-5012. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and Account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is resolved.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**

Cardmember Agreement        Page 7 of 7

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

- You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
- The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

[Back to top]

# APPENDIX B

Complaint - Note                                                    (3-81) CCMD-8A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COOK COUNTY, ILLINOIS



07061359
ARROW FINANCIAL SERVICES LLC                    ]
                                                ]      CASE NO.   07M1M178937
                                                ]
                                                ]
            Plaintiff,                          ]      AMOUNT CLAIMED: $2,105.16
                        v.                      ]
LOIS EHRENBERG                                  ]      RETURN DATE:    9/11/07
                                                ]
                                                ]
            Defendant.

# CONTRACT COMPLAINT

The plaintiff claims as follows:

1.  That the defendant, LOIS EHRENBERG     , is indebted to plaintiff, ARROW FINANCIAL
    SERVICES LLC   by virtue of a certain credit card agreement entered into by defendant on or about

2.  Plaintiff has performed any and all conditions required by the contract, if any, and defendant has
    agreed to the terms of the credit agreement by use of the credit extended by plaintiff.

3.  That the defendant(s) are in default of the terms of the agreement by failing to make payments due.

4.  That after allowing for all credits due defendant, there is due and owing as of July 25, 2007 the sum
    of $1,456.65 plus, interest at the 5% statutory rate pursuant to 815 ILCS 205/2 in the amount of
    $648.51 for a total of $2,105.16.

5.  That demand has been made upon the defendant for the balance due, but defendant has failed to pay
    and still continues to refuse to pay said balance justly due.

6.  That the plaintiff, ARROW FINANCIAL SERVICES LLC  , is the bona fide owner of title to this
    action.

    WHEREFORE, plaintiff prays for judgment against the defendant in the amount of $2,105.16 plus
statutory interest to date of judgment plus costs of this action.

Barbara Nilsen                                  FREEDMAN ANSELMO LINDBERG & RAPPE LLC
Freedman Anselmo Lindberg & Rappe LLC                                        630/983-0770
PO Box 3228   Naperville, IL 60566-7228                              Fax No. 630-983-3726
Atty No. 26122                                                                    P0343PN

## THIS COMMUNICATION IS FROM A DEBT COLLECTOR.

061359

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COOK COUNTY, ILLINOIS**

YOUR FILE NO.
29451515

ROW FINANCIAL SERVICES LLC          ]
                                    ]
                                    ]
                                    ]
            Plaintiff,              ]
                        v.          ]      CASE NO.
IS EHRENBERG                        ]
                                    ]
                                    ]
                                    ]
            Defendant.

# A F F I D A V I T

I, _M. Mackey_ , being first duly sworn, depose and say that I have personal knowledge of facts hereinafter said forth and that if sworn as a witness I can testify competently thereto:

That I hold the position of _Legal Clerk_ with ARROW FINANCIAL SERVICES LLC incorporated under the laws of the State of _DELAWARE_ ;

I have knowledge of an account in favor of ARROW FINANCIAL SERVICES LLC   and against LOIS EHRENBERG   with a total current balance due of $2,098.17 as of June 20, 2007; plus interest at 5%, pursuant to 815 ILCS 205/2 from the aforesaid date; until paid is with my knowledge true and correct, after all credits due the defendant, and that upon information and belief all services were rendered and/or goods were sold and delivered or that the defendant(s) are in breach of the repayment terms as per any and all agreements between the aforementioned parties.

"OFFICIAL SEAL"
Nicole Spivey
Notary Public, State of Illinois
Commission Expires 4/6/2011

NED AND SWORN
BEFORE ME THIS DATE

_7/10/07_

_Nicole Spivey_
NOTARY PUBLIC

_M. Stenken_
SIGNATURE

_M. Mackey_
PRINTED

F002ARR